IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

AMANDA SHAVER, individually and on
behalf of a class of similarly situated individuals,

*Plaintiff*,

v.                                                                                    CLASS ACTION

UBER TECHNOLOGIES, INC.,
a Delaware corporation,

*Defendant*.
_____/

## COMPLAINT

Plaintiff Amanda Shaver ("Plaintiff"), by and through her undersigned counsel, brings this class action complaint against Uber Technologies, Inc. ("Uber") to end Defendant's practice of transmitting unauthorized and unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## INTRODUCTION

1. Plaintiff, Amanda Shaver ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Uber Technologies, Inc. ("Uber" or "Defendant"). Uber sent unauthorized text messages to Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA").

2. Defendant is a developer and operator of a world-wide technology company that uses a sophisticated smart phone application to connect individuals who need transportation services to its drivers.

1

3. In an effort to promote its transportation services, Defendant, through its agents, engaged in an invasive and unlawful form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

4. By sending these unauthorized text messages, Defendant violated the statutory and privacy rights of the individuals to whom the messages were sent. Defendant further caused those individuals actual harm because cell phone users like Plaintiff have to pay their respective wireless service providers either for each text message call they receive, incur a usage allocation deduction from the total number of text messages allowed under their cell phone plan, or pay a fixed or variable usage fee.

5. In April 2012, the PEW Research Center found that 69% of text message users reported receiving unwanted spam text messages, with 25% reporting receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet (last visited June 3, 2016); *See also* Spam Invades the Last Refuge, the Cellphone, *New York Times*, April 8, 2012, ("In the United States, consumers receive roughly 4.5 billion spam text messages [per year]").

6. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings this suit under the TCPA, which prohibits unsolicited text calls to cellular phones.

7. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized text messaging activities and an award of actual and statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

8. Plaintiff is a resident of Florida and is a "natural person" as defined by 47 U.S.C. § 153(39).

9. Defendant Uber Technologies, Inc. is a world-wide technology company that utilizes a mobile application to connect consumers with its drivers. Uber is a Delaware corporation with its principle place of business in California. It is an incorporated "person" as defined by 47 U.S.C. § 153(39), and conducts business throughout the United States, Florida, and the world.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *See Mims v. Arrow Fin, Serv., LLC,* 132 S. Ct. 740 (2012); *Gomez v. Campbell-Ewald Co.,* 136 S. Ct. 663 (2016).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendant conducts business in this District and throughout the State of Florida.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

12. The Telephone Consumer Protection Act ("TCPA") regulates, *inter alia*, the use of automated telephone dialing systems ("ATDS").

13. In passing the TCPA, Congress noted that automated telephone calls are a "nuisance and an invasion of privacy" and that passing the TCPA was "the only effective means of protecting telephone consumers from this nuisance and invasion of privacy." *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(10), (12).

14. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person called.

15. Section §227(a)(1) of the TCPA defines an ATDS as equipment having the

capacity:

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
> (B) to dial such numbers.

16. In 2015, the Federal Communication Commission ("FCC") reaffirmed its long standing position on the definition of an ATDS:

> Congress intended a broad definition of autodialer, and that the Commission has already twice addressed the issue in 2003 and 2008, stating that autodialers need only have the "capacity" to dial random and sequential numbers, rather than the "present ability" to do so. Hence, any equipment that has the requisite "capacity" is an autodialer and is therefore subject to the TCPA.

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, *FCC Declaratory Ruling*, 30 F.C.C. Rec'd 7961, ¶ 15 (July 10, 2015) ("2015 FCC Ruling").

17. "Prior express written consent" is required before making automated telemarketing calls, meaning there must be a written agreement, signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200; *see also* 2015 FCC Ruling at ¶ 98.

18. The FCC has also clarified that text messages qualify as "calls" pursuant to the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

4

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *Report and Order*, 18 FCC Red. 14014, ¶ 165 (July 3, 2003); restated in 2015 FCC Ruling at ¶ 116 n.395.

## FACTUAL ALLEGATIONS APPLICABLE TO PLAINTIFF

19. The use of text messaging to send advertisements has become increasingly popular in recent years. Text messaging, which is technically referred to as "Short Message Services" or "SMS," allows cellular telephone subscribers to use their cellular telephones to send and receive short messages, usually limited to 160 characters.

20. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings and alerts the recipient that he or she is receiving a call.

21. While regular forms of advertising usually do not impose any costs on the consumer, unauthorized SMS calls invade the recipients' privacy and even cost recipients money because cell phone users like Plaintiff have to pay their respective wireless service providers either for each text message call they receive, incur a usage allocation deduction from the total number of text messages allowed under their cell phone plan, or pay a fixed or variable usage fee.

22. Beginning in or about 2015, Defendant and its agents caused the mass transmissions of wireless spam to the cell phones of individuals it hoped were potential passengers and users of Uber's transportation service, as well as individuals it hoped were potential drivers and providers of Uber's services.

23. Plaintiff received text messages on her cellular telephone that were part of Uber's direct marketing strategy described above and the content of the messages received by Plaintiff was generic and not individualized to Plaintiff.

5

24. The text messages sent to Plaintiff's, and the other class members', cellular telephones were made using an ATDS. The ATDS utilized by Defendant had the capacity to store or produce telephone numbers to be texted, using a random or sequential number generator, or from a database of numbers, and to text thousands of such numbers without human intervention.

25. At no time did Plaintiff provide consent, including any written consent, to receive the above-referenced messages or any other such unauthorized text messages from Defendant, its agents, or partner entities.

26. The text messages both annoyed and harassed Plaintiff, as Plaintiff not only had to spend time reviewing the messages and deleting them from her cell phone, but the text messages Defendant sent to Plaintiff also consumed usable memory storage on Plaintiff's cell phone as Plaintiff's cell phone had to store the SMS messages upon receipt even though Plaintiff did not consent to receive such messages. Accordingly, Defendant has invaded Plaintiff's privacy and caused her actual concrete injury by sending the unwanted messages to her cellular telephone.

## CLASS ACTION ALLEGATIONS

**A.  The Class**

27. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

28. The class is defined as:

> **All persons within the United States who, since October 16, 2013, did not provide Defendant clear and conspicuous prior express written consent to be sent automated telemarketing text messages and who received one or more automated telemarketing text messages, from or on behalf of Defendant, to said person's cellular telephone, through the use of any automatic telephone dialing system.**

29. Defendant and its employees or agents are excluded from the Class. Plaintiff

6

does not know the number of members in the Class, but based on the generic content of the messages, as well as the large quantity of messages she received, believes the class members number in the tens of thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B.      Numerosity**

30.     Upon information and belief, Defendant sent automated telemarketing text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

31.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class Members is a matter capable of ministerial determination based on Defendant's records.

**C.      Common Questions of Law and Fact**

32.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

    a.   Whether Defendant sent telemarketing text messages to Plaintiff's and Class members' cellular telephones using an ATDS;

    b.   Whether Defendant can meet its burden of showing it obtained prior express written consent to send each such message;

    c.   Whether Defendant's conduct was knowing and/or willful;

    d.   Whether Defendant is liable for damages and the amount of such damages; and

    e.   Whether Defendant should be enjoined from such conduct in the future.

33.     The common questions in this case are capable of having common answers. If the evidence proves that Defendant routinely sends automated text messages to telephone

numbers assigned to cellular telephone services without prior express written consent, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.     Typicality**

34.     Plaintiff's claims are typical of the claims of Class members, as they are all based on the same factual and legal theories.

**E.     Protecting the Interests of Class Members**

35.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this action.

**F.      Proceeding via Class Action is Superior and Advisable**

36.     A class action is the superior method for the fair and efficient adjudication of this controversy. The Class members' interest in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

37.     Management of this class action is unlikely to present any difficulties and many district courts have certified similar if not identical classes involving violations of the TCPA.

**COUNT I**
**Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.***

38.     Plaintiff repeats and re-alleges the above paragraphs of this complaint and incorporates them herein by reference.

39.     Defendant sent multiple automated telemarketing text messages to cellular telephone numbers belonging to Plaintiff and the other members of the putative Class without

their prior express written consent.

40. Each of the aforementioned messages sent by Defendant constitutes a violation of the TCPA.

41. Plaintiff and the other members of the Class are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

42. Additionally, Plaintiff and the other members of the Class are also entitled to and do seek injunctive relief prohibiting such conduct by Defendant in the future.

43. Plaintiff and the Class are also entitled to and do seek a declaration that:

    a. Defendant violated the TCPA;

    b. Defendant placed telemarketing text messages; and

    c. Defendant placed telemarketing text messages to Plaintiff and the other members of the Class without their prior express written consent.

## COUNT II
### Knowing and/or Willful Violations of The Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*,

44. Plaintiff repeats and re-alleges all above paragraphs of this Complaint and incorporates them herein by reference.

45. Defendant knowingly and/or willfully sent multiple automated telemarketing text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Class without their prior express written consent.

46. Each of the aforementioned messages sent by Defendant constitute a knowing and/or willful violation of the TCPA

47. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the other members of the Class are entitled to an award of treble damages up to $1,500.00 for

each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

48. Additionally, Plaintiff and the other members of the Class are entitled to and do seek injunctive relief prohibiting such conduct by Defendant in the future.

49. Plaintiff and the other members of the Class are also entitled to and do seek declaratory relief stating:

    a. Defendant knowingly and/or willfully violated the TCPA;

    b. Defendant knowingly and/or willfully placed telemarketing text messages to Plaintiff and the other members of the Class;

    c. Defendant knowingly and/or willfully placed telemarketing text messages to individuals who did not provide Defendant with prior express written consent to do so; and

    d. It is Defendant's practice and history to place telemarketing text messages to individuals without their prior express written consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2. Declaratory relief as requested;

3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

5. An award of attorneys' fees and costs to counsel for Plaintiff; and

6. Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

June 7, 2016                                             AMANDA SHAVER, individually and on behalf of
                                                         a class of similarly situated individuals

                                                         /s/ David P. Healy
                                                         One of Her Attorneys


David P. Healy (FL Bar No. 940410)
Dudley, Sellers, Healy & Heath, PLC
SunTrust Financial Center
3522 Thomasville Rd., Suite 301
Tallahassee, Florida 32309
Tel: (850) 222-5400
Fax: (850) 222-7339
dhealy@davidhealylaw.com